In the Matter of the Application for a Construction of the Last
Will and Testament of MARTIN J. GROSSMAN, Deceased.

Surrogate's Court, Bronx County, February 24, 1928.

Wills — construction — part of estate left in trust for benefit of widow —
direction in will to pay taxes and incumbrances from part of residuary
estate applies to taxes and incumbrances on property in widow's trust
— trust for nephews and nieces until they attain certain age is valid —
devise in trust to charitable corporation — amount that can be so devised
under Decedent Estate Law, § 17, must be determined at death of
testator — balance of income of residuary estate over what charitable
corporation may take goes to those entitled to next eventual estate,
under Real Property Law, § 63 — nephews and nieces named in will are
entitled to said balance — evidence of other intent of testator rejected
— trustee not required to direct use of money paid to charitable corpora-
tion — widow not required to give bond.

The testator by his will devised his dwelling house to his widow for life or so long
as she remained unmarried and directed his executors to pay off incumbrances

Misc. 526]     Surrogate's Court, Bronx County, February, 1928.

thereon. He also devised $40,000 in trust for the benefit of his widow for life or so long as she remained unmarried and upon her death or remarriage he directed the trust fund to be divided into three parts and held in trust for two nephews and a niece until they should attain a certain age when the principal was to be paid to them. He also bequeathed to said two nephews and niece and to two other nephews the sum of $500 each. The residuary estate was left in trust with directions to the trustees to " pay all taxes, assessments, water rents, insurance, including both fire and accident, and also pay for all necessary external repairs " of the premises devised to his wife. The balance of the net income from said trust was to be paid to a charitable corporation, the principal to be paid to said corporation on the widow's death, but in case the devise to said charitable corporation exceeded that allowed, under section 17 of the Decedent Estate Law, the over-plus on the death of his widow was to go " to my nephews and niece hereinabove mentioned or their survivors."

Construing the paragraph of the will devising the house to the widow with directions to the executors to pay off the mortgage and the paragraph setting up the residuary in trust, it is held that the interest on the mortgage and the mortgage itself must be paid out of the income of said last-mentioned fund.

The disposition of the first trust to the nephews and niece is absolute and hence the period fixed as the life of each trust does not exceed two lives in being and, therefore, there is no illegal suspension as to the principal of that trust. Said provision as to the nephews and niece must be construed to mean that the income is to be paid to them for life but in case they live to a certain age the trust will terminate and they become entitled to the principal.

For the purpose of determining the amount of the residuary estate that may legally go to the charitable corporation, under section 17 of the Decedent Estate Law, the net value of the estate at the time of the testator's death must be ascertained by deducting from the value of all the decedent's property the amount of his debts. The value of one-half that amount is the amount that the charitable corporation may legally take.

The income from that part of the residuary estate which does not go to charity goes to the nephews and niece of the testator under the terms of the will, as the persons presumptively entitled to the next eventual estate, within the meaning of section 63 of the Real Property Law. And those nephews include all that are mentioned in that paragraph of the will making specific bequests.

Evidence to show an intent on the part of the testator other than that expressed in the will is rejected.

The trustee is not chargeable with the duty of seeing that the income paid to the charitable corporation is applied as directed in the will.

It is not necessary that the widow give a bond on the ground that she has a life estate in some part of the residue, for the latter remains in the hands of the trustee and she has no control thereof.

PROCEEDING for construction of will.

*Merkle & Merkle,* for the petitioner.

*Adolph E. Gutgsell,* for the executor.

*Frederick W. Hottenroth,* for Martin J. Grossman and others.

*Ralph Stout,* for Katherine E. Grossman.

*Elfers & Trebing,* for Mortimer M. Grossman and others.

Surrogate's Court, Bronx County, February, 1928.     [Vol. 131

*Salter & Steinkamp,* for Wartburg Orphan's Farm School.

*Elliott & Robeson,* for Emma Smith.

SCHULZ, S.   One of the executors named in the decedent's will has brought this proceeding for a construction under section 145 of the Surrogate's Court Act.

The testator in the instrument stated, in so far as its provisions are material to the questions involved, devised his dwelling house to his widow for life, or as long as she remained his widow, gave her all of the furniture, furnishings, jewelry and other personal effects in the same, and authorized and directed his executors, at such time as to them seemed wise, to pay off any incumbrances which might be liens against such house.

In the 5th paragraph of his will he gave to his executors the sum of $40,000 in trust to invest as directed and pay over the net income to his wife or to apply the same to her use, maintenance, comfort and support during her life, or as long as she remained unmarried, with the proviso that if the income did not equal the sum of $2,000 a year, recourse might be had to the principal. Upon her death or remarriage, he directed the trust fund to be divided into three parts, one of which was to be held by his trustees for the benefit of each of his nephews, Martin Grossman and Adolph Grossman, and his niece, Anna Margaretha Grossman, children of his brother, Gustav Grossman, who had predeceased him, the income to be paid to them or applied for their use until they reached certain respective ages when the principal was to be received by them.   The 7th paragraph of his will is as follows:

"*Seventh.* I give and bequeath to my nephews, MARTIN and ADOLPH, and my niece, ANNA MARGARETHA, children of my brother GUSTAV GROSSMAN, and to my nephews WALLACE and MORTIMER, sons of my brother, GEORGE J. GROSSMAN, each the sum of Five hundred ($500.) Dollars, absolutely and forever."

By paragraph 8 he gave all his residuary estate to his executors in trust to invest as directed, and from the net income to " pay all taxes, assessments, water rents, insurance, including both fire and accident, and also pay for all necessary external repairs " of the premises devised to his wife for life, or if the house was sold, to pay her the sum of fifty dollars per month as provided in an earlier paragraph of the will.   The balance of the net income he directed his trustees to pay to the " Wartburg Orphan's Farm School of the Evangelical Lutheran Church," and provided how the said income should be applied by the said corporation.   Upon the death of his wife, he gave, devised and bequeathed the said residue to the said Wartburg Orphan's Farm School for certain

purposes stated by him, if it be then in active existence, and if not, then to some orphan home or some hospital under the Evangelical Lutheran Church to be selected by the trustees or their survivor or by the surrogate of the county of Bronx.    In the same paragraph he proceeded as follows: " Should the provisions of this paragraph ' eighth ' exceed the amount permitted by law to be given for charitable purposes I direct that the principal of my estate herein bequeathed to such orphan school, home or hospital shall be reduced to the amount permitted by law, and the over-plus upon the death of my said wife, I give and bequeath to my nephews and niece hereinabove mentioned or their survivors; the issue of any deceased nephew or niece to take the parent's share."

Paragraph 9 is as follows:

"*Ninth.* I have made no provision in this my Will for my brothers and sister, or her son, because they are already amply provided for."

The decedent left him surviving his widow, and as his next of kin and heirs at law, one brother, one sister, and the three children of Gustav Grossman, aforesaid.    Other relatives mentioned in the will, who, however, are not heirs at law or next of kin, are Wallace Grossman and Mortimer Grossman, children of his surviving brother, and a son of his surviving sister, whose name does not appear in the will.

Taking the many questions as to which there is doubt in the minds of the parties, as they arise from the will, I hold that the direction in paragraph 4 to pay off incumbrances and that in paragraph 8 to pay taxes, etc., on the premises there referred to, apply to the mortgage upon the same and the interest upon such mortgage, and that such payment should be made out of the part of the residuary estate hereinafter stated, and that pending the satisfaction of such mortgage, the interest upon the same must be paid from the same fund.

It seems to me to be quite plain that the testator intended that the house in question, which was his own and his wife's home at the time of his death, should be occupied by his wife if she wished to do so after his death, free from all incumbrances and from the charges and expenses referred to by him, and that the fact that the mortgage and the interest were not specifically referred to, when he detailed the taxes, assessments, etc., was due to an oversight.    What I am convinced he had in mind and attempted to express by the language used, was to give his wife the use of the home without expense and in addition the sum of $2,000 per year upon which to live.    Even this provision was not large in view of the size of the estate, and to cut it down by requiring her to pay

34

interest on the mortgage would, I am convinced, be contrary to his desires. Being satisfied of his intent, it must be given effect if possible (*Matter of Silsby*, 229 N. Y. 396, 402; *Matter of Buechner*, 226 id. 440, 444; *Matter of Pulis*, 220 id. 196, 205; *Cammann* v. *Bailey*, 210 id. 19, 30; *Sedlaczek* v. *de Dreuzy*, 220 App. Div. 446, 449), and this even if it is necessary to transpose or supply words to effectuate it. (*Matter of McGeehan*, 200 App. Div. 739, 747; affd., 237 N. Y. 575; *Dreyer* v. *Reisman*, 202 id. 476, 480; *Phillips* v. *Davies*, 92 id. 199, 204.)

The disposition of the shares of the nephews and niece in the trust set up in paragraph 5, in case of their respective deaths, is absolute, and hence the period fixed as the life of each trust does not exceed two lives in being, and no illegal suspension of the power of alienation has, therefore, taken place. (*Matter of Horner*, 237 N. Y. 489, 496; *Schermerhorn* v. *Cotting*, 131 id. 48, 61; *Matter of Hicks*, 221 App. Div. 378.) The fact that each may end as to a part thereof when the beneficiary reaches a certain age, should be construed to mean when he or she reaches that age or at his or her death before that time. (*Sawyer* v. *Cubby*, 146 N. Y. 192, 197; *Montignani* v. *Blade*, 145 id. 111, 120; *Schermerhorn* v. *Cotting*, *supra*; *Van Cott* v. *Prentice*, 104 N. Y. 45, 57; *Matter of Witthaus*, N. Y. L. J. March 30, 1916.) This construction would validate, rather than invalidate, the provision, and hence should be preferred. (*Seitz* v. *Faversham*, 205 N. Y. 197, 202; *Matter of Lally*, 136 App. Div. 781, 787; affd., 198 N. Y. 608.)

The provisions hereinbefore referred to by which the testator gave the residue of his estate in trust, are valid in so far as he directs payment from the net income of the said trust estate of the taxes, water rents, etc., and under certain contingencies of fifty dollars per month to the widow. The legality of the disposition of the remainder of the income and the corpus upon the termination of the trust, however, is challenged by all of the attorneys submitting briefs in the matter and raises several serious and interesting questions.

The only answer interposed is that of the coexecutor of the petitioner by which he joins in the prayer of the latter. The petition sets forth the value of the estate of the decedent and the relationship of the parties, and no issue has been raised as to such allegations. The court is, therefore, warranted in accepting the same as proof thereof for the purposes of this proceeding. (Surrogate's Court Act, § 76.) From them it appears that the decedent died leaving him surviving a wife, and that he attempted to devise and bequeath to a charitable corporation more than one-half of his estate after the payment of his debts. Section 17 of the Decedent

Estate Law (as amd. by Laws of 1927, chap. 502) provides that under such circumstances such devise and bequest shall be valid to the extent of one-half and no more.

To fix such amount the value of the estate at the decedent's death must be ascertained and this is done by deducting from the value of all of the decedent's property the amount of his debts. The value of one-half of this amount represents the share of the estate which the charitable corporation may take under the conditions stated in the will, and from the other half there must be paid all legacies and other payments directed by him to be made and such other charges as usually are payable out of a residuary estate. (*Matter of Seymour*, 239 N. Y. 259; *Matter of Carnegie*, 203 App. Div. 91; affd., 236 N. Y. 517; *Matter of Brooklyn Trust Company*, 179 App. Div. 262, 264.)

The executors, therefore, will be required to turn over to themselves the amount which the charitable corporation may take and so much of the other one-half as remains after the payments last above referred to. Out of the income of the latter, there are to be paid the taxes, assessments, water rent, insurance, including both fire and accident, and all necessary external repairs on the building in Jackson avenue, and if it be sold, then there is to be paid to the widow or applied to her use, maintenance, comfort or support during her life or until she remarries, the sum of fifty dollars per month. The income on the remainder of the trust fund, to wit, that part which the charitable corporation may take, as above stated, is to be paid to the Wartburg Orphan's Farm School during the life of the decedent's wife and upon her death the corpus of that part of the trust fund is to be paid to the said charitable corporation or its successors in interest. If no other valid disposition had been made, the remaining income on that part of the trust fund which the charitable corporation cannot take, and its corpus when the trust is terminated, would be distributable as though the testator had died intestate. The latter, however, having in mind the possibility of some legal inhibition, made alternate dispositions which appear in the extract from paragraph 8 above quoted, and this has given rise to disputes between a number of the parties.

There is a doubt as to whether the widow takes the income by implication, because the trust is stated to be for her life and the income is undisposed of, or the nephew and niece are entitled to the same as persons presumptively entitled to the next eventual estate.

The first charges upon the income of this trust fund, namely, the payment of taxes, etc., are for the benefit of the widow and are made to continue during her life. This seems to be the reason

for using her life as the measure of the trust period. Upon her death, decedent intended that the corpus should go to the charitable corporation, but if that intent could not be given effect, as he feared, he directed that upon her death the disposition hereinbefore referred to should be made. There is no disposition of the income of that part of the trust fund which cannot inure to the benefit of the charity, and as there apparently is an explanation for fixing the life of the widow as the trust period, namely, that the taxes, etc., may be paid during that time, I do not think that the cases which hold that an estate by implication arises under certain circumstances, apply. (*Doughty* v. *Stillwell*, 1 Bradf. 300, 311; *Macy* v. *Sawyer*, 66 How. Pr. 381, 384; *Rathbone* v. *Dyckman*, 3 Paige, 9, 27; *Jackson* v. *Merrill*, 6 Johns. 185, 190.) There being no disposition of the income and no estate therein by implication, section 63 of the Real Property Law (as amd. by Laws of 1916, chap. 364) comes into effect. This provides that when in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation during the continuance of which rents and profits are undisposed of, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate. This applies also to personal property. (Pers. Prop. Law, § 11.) "The persons presumptively entitled to the next eventual estate are those who are entitled to the estate which is to take effect at the end of the period during which the rents and profits are undisposed of, or are invalidly accumulated." (*Matter of Kohler*, 231 N. Y. 353, 376; *Matter of Boggs*, 122 Misc. 73.)

Those who would come within that definition are the persons to whom the decedent referred as his " nephews and niece hereinabove mentioned," and this brings us to the question whether the decedent meant only the children of Gustav Grossman or them and the children of George J. Grossman.

I cannot escape the conviction that he meant the children of both. I reach this conclusion because he did name all of these persons in paragraph 7 of the will which immediately preceded the paragraph in which the disposition is made. Another indication that he had all of them in mind is furnished by the fact that in the 9th paragraph of his will he says that he has made no provision for his brothers and sister or her son because they are already amply provided for. It will be noted that he did not mention the sons of George Grossman in that connection, and unless he called the bequest of $500 to each of them a provision for them, which is highly improbable in view of the size of the estate, he must have meant the provision which he made for them out of the residuary referred to, in the event that his charitable intentions

were limited by statute. The income on the balance of such trust fund which the charities are not permitted to take is payable to the nephews and nieces named in paragraph 7 of the will as the persons presumptively entitled to the next eventual estate, as is also the corpus which remains when the trust finally ends.

Counsel for the children of Gustav Grossman, in his brief, asks for leave to offer evidence of the intent of the testator other than such as can be read from the document itself; but this is not permissible under the circumstances that exist here. The cases seem harmonious upon the proposition that the intent of the testator must be spelled out from the document itself and cannot be supplied by oral or other evidence unless it be offered to explain a latent ambiguity arising *dehors* the instrument as to the person or subject meant to be described or to rebut a resulting trust, and also under some authorities, in a third case where there is a patent ambiguity susceptible of resolution thereby. (*Mann* v. *Executors of Mann*, 1 Johns. Ch. 231, 234; *Reynolds* v. *Robinson*, 82 N. Y. 103, 106; *Brown* v. *Quintard*, 177 id. 75, 83; *Matter of Phipps*, 214 id. 378, 381; *Matter of Fowles*, 95 Misc. 48, 51; revd., 176 App. Div. 637; Appellate Division reversed and Surrogate's Court affirmed, 222 N. Y. 222.) If this were not the law, the statute governing the execution of wills would be of little avail and hopeless confusion result. In this will there is no latent or patent ambiguity, nor is there any possibility of a resulting trust. The request for permission to submit additional and other evidence of intent on the issue of construction here involved, is, therefore, denied. (*Williams* v. *Freeman*, 83 N. Y. 561, 570.)

It is not the duty of the trustee to follow the fund and see to its application. It would be manifestly impracticable, if not impossible, for him to obey the directions contained in the will " to pay over semi-annually," and at the same time remain charged with the responsibility of seeing that the corporation used it for the purposes which the testator desired. The corporation takes the fund from the trustee and is charged with the responsibility of applying it as the decedent directed.

It is not necessary that the widow give a bond as claimed by one of the parties upon the ground that she has a life estate in some part of the residuary. The latter remains in the hands of the trustee and she has no control or custody of the same.

Costs to all parties submitting briefs. Settle decision and decree on notice accordingly.